Stile v C-Air Customhouse Brokers-Forwards, Inc. (2022 NY Slip Op 02244)

Stile v C-Air Customhouse Brokers-Forwards, Inc.

2022 NY Slip Op 02244

Decided on April 05, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 05, 2022

Before: Gische, J.P., Moulton, Scarpulla, Shulman, Pitt, JJ. 

Index No. 656575/20 Appeal No. 15652 Case No. 2021-03689 

[*1]Clare Marie Stile, Plaintiff-Respondent,
v
C-Air Customhouse Brokers-Forwards, Inc., et al., Defendants-Appellants.

Herrick, Feinstein LLP, New York (John H. Chun of counsel), for appellants.
Lazarus & Lazarus, P.C., New York (Harlan M. Lazarus of counsel), for respondent.

Order, Supreme Court, New York County (Verna L. Saunders, J.), entered on or about October 4, 2021, which, insofar as appealed from, denied defendants' motion to dismiss the complaint pursuant to CPLR 3211(a)(1), (5), and (7), unanimously modified, on the law, to grant the motion as to the first, third through ninth, and eleventh through thirteenth causes of action, and so much of the second cause of action as is based on defendants' refusal to permit plaintiff to inspect the books and records of defendants C-Air Customhouse Brokers-Forwards, Inc. (C-Air NY) and C-Air International, Inc. (C-Air LA) (together, the Companies), and otherwise affirmed, without costs.
Plaintiff, the personal representative of the estate of Salvatore Joseph Stile, is bound by the settlement agreement signed by Stile. "It is a presumption of law, in the absence of express words, that the parties to a contract intend to bind not only themselves, but [also] their personal representatives" (Matter of Buccini v Paterno Constr. Co., 253 NY 256, 259 [1930] [internal quotation marks omitted]; see also Chamberlain v Dunlop, 126 NY 45, 52 [1891] ["The presumption is that the party making a contract intends to bind his executors and administrators, unless the contract is of that nature which calls for some personal quality of the testator, or the words of the contract are such that it is plain no presumption of the kind can be indulged in"]).The settlement agreement at issue does not expressly exclude application of its terms to Stile's personal representative (see Matter of Buccini, 253 NY at 259), nor does it require any particular personal quality of Stile's (see Chamberlain at 52; cf. Buccini, 253 NY at 257 ["[plaintiff's decedent] made a contract . . . to decorate [a] ballroom, banquet hall and swimming pool . . . [T]here [was] a provision that all the decorative figured work shall be done by [plaintiff's decedent] personally"]).
Plaintiff's contention that defendants improperly raise certain arguments for the first time on appeal is unavailing. We may consider new arguments raised for the first time on appeal, "so long as the issue is determinative and the record on appeal is sufficient to permit our review" (Facie Libre Assoc. I, LLC v SecondMarket Holdings, Inc., 103 AD3d 565 [1st Dept 2013] [internal quotation marks and brackets omitted], lv denied 21 NY3d 866 [2013]).
The first, third, and fourth causes of action should be dismissed. In the first cause of action, plaintiff claims that as a shareholder of the Companies, she is entitled to "a shareholder distribution based on [her] ownership in the Companies," i.e., a dividend, and in the third and fourth causes of action, she seeks the dissolution of the Companies. However, in the settlement agreement, Stile agreed to not seek dividends or such dissolution.
The fifth, sixth, ninth, and eleventh through thirteenth causes of action should be dismissed as they seek relief prohibited by the language of the settlement.
In the seventh cause of action for conversion, plaintiff alleges that she has "an immediate superior right of possession to [1] distributions as a 33% shareholder . . . and . . . [2] a return of monies and properties wrongfully stripped from the Companies" by the individual defendants. The first part of the conversion claim based on distributions should have been dismissed. A claim for conversion "cannot be predicated on a mere breach of contract" (Kopel v Bandwidth Tech. Corp., 56 AD3d 320 [1st Dept 2008]). Thus, to the extent the claim for distributions is based on the settlement agreement, it is not a claim for conversion. In addition, Stile agreed in the settlement to not seek any dividends.
The second part of the conversion cause of action alleges that the individual defendants "siphoned, funneled, and secreted the assets of the Companies into related entities in which [Stile] has no interest." The claim that the individual defendants stripped the Companies of assets is a derivative claim (see Yudell v Gilbert, 99 AD3d 108, 114 [1st Dept 2012]), and Stile agreed in the settlement to not "commence . . . any derivative action in the name of the Companies."
The eighth cause of action for unjust enrichment should have been dismissed, because "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded" (Ashwood Capital, Inc. v OTG Mgt., Inc., 99 AD3d 1, 10 [1st Dept 2012] [internal quotation marks omitted]). The case on which plaintiff relies, Beach v Touradji Capital Mgt. L.P. (85 AD3d 674 [1st Dept 2011]), is distinguishable, as it involved oral, not written, agreements. By contrast, here it is undisputed that there is an express written agreement, i.e., the settlement agreement.
The court properly declined to dismiss the tenth cause of action, for a declaratory judgment. Plaintiff alleges, "As a result of the Parties' dispute concerning Plaintiff's equity stake in the Companies, an actual and justiciable controversy exists between the [parties] concerning their . . . rights and liabilities to each other." The complaint also alleges that, "[d]uring [Stile's] lifetime, he was a one-third . . . shareholder . . . in the Companies and upon his death, the Estate succeeded to his rights to same." The documentary evidence submitted by defendants did not utterly refute this allegation.
Stile did not cease being a shareholder by virtue of the settlement. On the contrary, paragraph 10(a) says, "Stile agrees that so long as the payments and benefits provided for in [the settlement] . . . are made to him, [he] shall not . . . assert any of his rights as a shareholder of C-Air NY and/or C-Air LA." Furthermore, he continued to receive K-1's from the Companies' accountants, showing that he owned one-third of each Company.
To be sure, paragraph 10(d) of the settlement says that if Stile "sells, [*2]pledges, encumbers, transfers, or otherwise disposes of . . . any interest in his shares of . . . C-Air NY and/or C-Air LA, . . . all payments and benefits due pursuant to this . . . Stipulation shall immediately cease." However, it is unclear if "transfer" includes a transfer by operation of law, i.e., the transfer to Stile's estate when he died. Defendants rely on Estate of Calderwood v ACE Group Intl. LLC (2017 NY Slip Op 30273[U] [Sup Ct, NY County], affd 169 AD3d 552 [1st Dept 2019], lv dismissed 33 NY3d 1044 [2019]), but in that case the LLC agreement defined transfer to include any "disposition, voluntary or involuntary, by operation of Law or otherwise" (id. at *5). The settlement in the case at bar is not as broad. Further, even if "transfer" includes a transfer by operation of law, paragraph 10(d) merely says, "all payments and benefits due pursuant to this . . .Stipulation shall . . . cease." It does not say a transfer causes Stile's shares to disappear.
It is true that plaintiff has not agreed in writing to be bound by the relevant paragraphs of the settlement agreement, as required by paragraph 10(d). However, if it is ultimately determined that this paragraph applies to transfers by operation of law, plaintiff should be given the opportunity to execute such a writing.
Contrary to defendants' claim, plaintiff's request for a declaratory judgment is appropriate. "The purpose of such an action is to . . . quiet[] or stabiliz[e] an uncertain or disputed jural relation" (Bartley v Walentas, 78 AD2d 310, 312 [1st Dept 1980] [internal quotation marks omitted]). That is precisely the case here. None of the other causes of action would give plaintiff the relief she seeks in her declaratory judgment claim. If it is ultimately determined that Stile's estate owns one-third of each of the Companies, this will presumably influence defendants' conduct (see Estate of Calderwood v ACE Group Intl. LLC, 157 AD3d 190, 197 [1st Dept 2017], lv dismissed 31 NY3d 1111 [2018]).
The second cause of action alleges that defendants "are guilty of shareholder oppression" because they refused to permit plaintiff to inspect the Companies' books and records and they refused to recognize her as a shareholder. To the extent this claim is based on defendants' refusal to allow plaintiff to inspect the books and records, it is dismissed. In the settlement, Stile agreed to not "make any request or demand to inspect the records of the Companies." However, to the extent the claim is based on defendants' refusal to recognize plaintiff as a shareholder, it was properly permitted to continue.
The court correctly declined to dismiss the fourteenth and fifteenth causes of action. Defendants contend that, except for C-Air LA's obligation to reimburse Stile for loans, he released all claims concerning loans. However, if Stile made loans after the date of the release, they would not be covered by the release, which extended up to May 19, 2010. Also, defendants' contention that [*3]the claims concerning loans must be arbitrated is unavailing. The settlement provides that "[w]ithin thirty . . . days from the execution hereof, the parties . . . shall appoint [nonparty] Ken Ayers to resolve and determine the amount of loans made by each shareholder to C-Air LA." The settlement agreement was executed on May 19, 2010. Thus, the arbitration provision has expired.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 5, 2022