OPINION OF THE COURT
John B. Riordan, J.
The court has before it a petition and supplemental order to show cause dated November 19, 2008, wherein Eugene Shalik and James DeVita, the preliminary coexecutors of the estate of Pearl B. Kalikow, deceased (hereafter petitioners), seek an order disqualifying Dennis A. Konner from serving as arbitrator with respect to a notice of arbitration dated September 24, 2008 (the current arbitration demand). The petition is opposed by the decedent’s children, Edward M. Kalikow and Laurie Platt (Kalikow and Platt will be sometimes referred to collectively as respondents). The order to show cause contains a temporary restraining order staying respondents from taking any steps in connection with the arbitration on the current arbitration demand pending determination of the disqualification motion. The stated ground for the requested disqualification is that the arbitrator is to be called as a material witness with respect to the facts and circumstances surrounding the subject matter of the arbitration “whose testimony will be vital to Petitioners’ defense of the claims set forth in Respondents Arbitration Demand.” For the reasons hereinafter set forth, petitioners’ motion is denied without prejudice to any claims of arbitrator misconduct that petitioners might assert when the arbitration is complete and an award is presented to the court for confirmation or vacatur. The temporary restraining order is also vacated.
Prior Proceedings
In June of 2006, respondents served their first demand to arbitrate on petitioners and petitioner Shalik moved for a stay of arbitration. Petitioners thereupon moved to disqualify Konner based, inter alia, on his personal and professional relationship with Kalikow and entities controlled by Kalikow and such motion was granted by decision dated December 13, 2006 (decision No. 904).[1] Respondents moved to renew and reargue and by decision dated March 20, 2007 (decision No. 116),[2] the motion to renew was denied and the motion to reargue granted with the effect that petitioners’ first motion to disqualify Kon *775 ner was denied. An order to that effect was entered on March 29, 2007. Petitioners appealed from the order of March 29, 2007 and such order was affirmed (Matter of Kalikow, 58 AD3d 849 [2d Dept 2009]).
By decision dated October 13, 2006 (decision No. 632),[3] the court ruled that the dispute was subject to arbitration. A decree to that effect was entered on November 22, 2006 and petitioner Shalik appealed from such decree and it was affirmed (Matter of Kalikow, 58 AD3d 846 [2d Dept 2009]).
By notice of motion dated April 30, 2007 and amended notice of motion dated May 8, 2007, petitioners again moved to disqualify Konner. Following an evidentiary hearing on June 26, 2007, this second disqualification motion was denied by decision dated November 9, 2007 (decision No. 773) and order dated January 3, 2008. Petitioners have appealed from the order of January 3, 2008 and this order was affirmed (Matter of Kalikow, 58 AD3d 849 [2d Dept 2009]).
Konner conducted a hearing with respect to the first arbitration demand on April 9, 2008 and issued a decision/award dated April 29, 2008. Respondents moved to confirm the award and petitioners cross-moved to vacate. This court confirmed the award by decision dated September 26, 2008 (decision No. 429) and order dated October 10, 2008.
Meanwhile, on February 28, 2007, petitioners commenced an action in Supreme Court against Hewlett Associates L.B (Hewlett),[4] Kalikow and Platt (the Hewlett action). That action was transferred to this court by stipulation of the parties effective May 9, 2007. Prior to the transfer, respondents and Hewlett had moved to stay the Hewlett action and compel arbitration of the dispute. By decision dated March 27, 2008 (decision No. 65) and order dated May 12, 2008, this court granted respondents’ motion to stay the lawsuit and compel arbitration.
Petitioners have communicated their intention to appeal from the orders of May 12, 2008 and October 10, 2008.
Current Motion
As previously noted the current motion seeks to disqualify Konner from serving as arbitrator because, according to petitioners, his “testimony will be vital to Petitioners’ defense *776 of the claims set forth in Respondents Arbitration Demand.” More specifically, petitioners contend that Konner’s testimony is critical with respect to two issues. The first is a demand for
“[a] declaration that Hewlett Associates did not terminate and instead continued as a partnership under the terms of its limited partnership agreement and under applicable New York law . . . after the deaths of Sidney Kalikow and Pearl Kalikow and that Edward Kalikow is the sole general partner of Hewlett Associates as of this date.”
The second is a request for a declaration that Hewlett and/or respondents do not owe decedent’s estate in excess of $9,573,125 plus interest representing previously undistributed cash from Hewlett.
Konner and respondents filed answers to the petition together with affidavits from Konner and Kalikow asserting, inter alia, that Konner did not have any personal knowledge of relevant and material facts and an affirmation by counsel Thomas J. McGowan. Respondents’ answer lists four denominated affirmative defenses[5] and a counterclaim seeking sanctions on the basis that the petition is frivolous.
Andrew M. Cuomo, the New York State Attorney General, has filed a notice of appearance but has not taken a position with respect to the petition.
The petition was originally returnable on December 3, 2008 and adjourned on consent until January 7, 2009. On that date the matter was set down for an evidentiary hearing and oral argument for January 16, 2009. All parties were invited to submit written memoranda in support of their respective positions. Both petitioners and respondents have submitted memoranda. At the hearing, petitioners, with the court’s permission, made an offer of proof as to the testimony anticipated from Konner. Such testimony related solely to Konner’s role in drafting the Hewlett limited partnership agreement and amendments thereto and the related intent of the parties. The offer of proof did not address the second issue concerning Hewlett’s purported debt to the estate of Pearl Kalikow. Prior *777 to hearing counsel, the Surrogate advised the parties that contrary to the dicta in the court’s decision No. 429 (Sept. 26, 2008) wherein it was stated that “[a] person who is a material witness in a proceeding cannot serve as an arbitrator in that proceeding (see Fritz v Fritz, 186 AD2d 625 [2d Dept 1992]),” on further review, the holding in Fritz v Fritz does not support a per se disqualification where the arbitrator has personal knowledge of facts relevant and material to the proceeding.
Discussion
While the legal principles controlling the situation where a contract providing for arbitration names one or more specific individuals as arbitrator may be counterintuitive, they are the law of the State.[6] “The spirit of the arbitration law being the fuller effectuation of contractual rights, the method for selecting arbitrators and the composition of the arbitral tribunal has been left to the contract of the parties” (Matter of Lipschutz [Gutwirth], 304 NY 58, 61-62 [1952]). “In furtherance of the laudable purposes served by permitting consenting parties to submit controversies to arbitration, the law has adopted a policy of noninterference, with few exceptions, in the mode of dispute resolution” (Matter of Sprinzen [Nomberg], 46 NY2d 623, 629 [1979]). “In the absence of a real possibility that injustice will result, the courts of this State will not rewrite the contract for the parties” (Matter of Siegel [Lewis], 40 NY2d 687, 691 [1976], citing Matter of Lipschutz [Gutwirth], 304 NY 58, 64 [1952]).
Notwithstanding its recognition of these principles, the Court of Appeals has also concluded that “an award which is violative of public policy will not be permitted to stand” (Matter of Sprinzen [Nomberg], 46 NY2d at 630),[7] and an arbitrator may be removed “[u]pon a showing that there is reason to believe [he] is incapable of discharging his duties in an impartial manner” *778 (Matter of Lipschutz [Gutwirth], 304 NY 58, 65 [1952] [decided under article 84 of the Civil Practice Act]).[8]
The restrictions on arbitrator action and conduct are found either in the contract of the parties or CPLR article 75. A brief review of the relevant portions of article 75 is accordingly in order.
CPLR 7501 expressly forbids judicial review of the parties’ disputes stating, inter alia: “In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.”[9] Protracted judicial litigation with respect to the matter is to be discouraged lest legislative policy and the parties’ initial intentions be frustrated (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d 91, 95-96 [1975]). Courts are to be guided by the fundamental principle that the resolution of disputes by arbitration is grounded in agreement of the parties (County of Sullivan v Edward L. Nezelek, Inc., 42 NY2d 123, 128 [1977]).
CPLR 7506 (a) requires an oath from the arbitrator “to hear and decide the controversy faithfully and fairly” and the courts have found that the arbitrator’s oath fixes the criteria for the performance of his duties.[10] “[I]f the arbitrators, in the actual execution of their office, prove to have been unfair or unfaithful to their obligations, their award is not impervious to judicial action” (Matter of Siegel [Lewis], 40 NY2d 687, 691 [1976]). “If that oath be violated and an award procured by fraud or corruption or if an award be tainted by partiality or interest of an arbitrator, it will be vacated” (Matter of Lipschutz [Gutwirth], 304 NY 58, 64-65 [1952]).
*779 A determination as to whether the oath has in fact been violated must await the arbitrator’s decision. In the context of the current proceeding, this court’s duty is to determine whether it is impossible for the arbitrator “to hear and decide the controversy faithfully and fairly” because he is a potential material witness. Paraphrasing the rule enunciated in Lipschutz, petitioners’ obligation was to present evidence showing that there is reason to believe that Konner is incapable of discharging his duties in an impartial manner by reason of his being a potential material witness. Proving such a negative is no mean task particularly when the court is under an obligation to enforce the express terms of the arbitration agreement.[11] Here, this burden has not been met. This court concludes that petitioners have not demonstrated by clear and convincing evidence, or otherwise, that Konner is incapable of discharging his duties in an impartial manner.
CPLR 7506 (c) provides, inter alia, that “[t]he parties are entitled to be heard, to present evidence and to cross-examine witnesses.” These are the minimal guarantees of due process enunciated by the Legislature and constitute the public policy of the State. There is no specific prohibition against the arbitrator testifying, though any such testimony must be subject to cross-examination.[12]
CPLR 7511 (b) sets forth the four narrow grounds upon which an arbitration award may be vacated. These four grounds Eire: (1) corruption, fraud, or misconduct in procuring the award; (2) partiality of an arbitrator appointed as a neutral; (3) that an arbitrator or agency making the award exceeded his power or so imperfectly executed it that a final definite award was not made; and (4) procedural defects, unless the party failed to notice the defect and failed to object to same (Matter of Matra Bldg. Corp. v Kucker, 2 AD3d 732, 733-734 [2d Dept 2003]). An arbitration award cannot be vacated even if the court concludes that the arbitrator’s interpretation of an agreement misconstrues or disregards its plain meaning or misapplies substantive law unless the award is violative of a strong public policy, is totally ir *780 rational, or exceeds enumerated limitations of the arbitrator’s powers (2 AD3d at 734).
A failure to establish a statutory ground for vacatur under CPLR 7511 will require confirmation of the award (Matter of Granite Worsted Mills [Aaronson Cowen, Ltd.], 25 NY2d 451, 454 [1969]). In New York there is a strong public policy favoring arbitration. Consequently an award is not subject to vacatur “unless the court concludes that it is totally irrational or violative of a strong public policy” and thus in excess of the arbitrator’s powers (Hacked v Milbank, Tweed, Hadley & McCloy, 86 NY2d 146, 154-155 [1995]).
Here, consideration of possible misconduct is premature. This court concurs with the reasoning set forth in Matter of Franks (Penn-Uranium Corp.) (4 AD2d 39, 40 [1st Dept 1957], rearg denied 3 AD2d 1005 [1st Dept 1957]), that the relief available for arbitrator misconduct in the course of arbitration proceedings is not disqualification and removal of the arbitrator, but an order vacating the award after completion of the proceedings, whereupon the court may clearly see whether a party’s rights were prejudiced by such misconduct. The paramount policy is to give effect to the terms of the contract providing for arbitration which, in the subject proceeding, identifies a particular individual to serve as arbitrator and interpret the agreement.[13]
Arbitrator Testimony
Few decisions have specifically addressed arbitrator testimony. In Matter of Meehan v Nassau Community Coll. (243 AD2d 12, 18 [2d Dept 1998]), in a tripartite arbitration, a party-designated arbitrator with personal knowledge of facts was permitted to reveal his knowledge to the other arbitrators and testify to such facts during the hearing. The Court specifically held that
“[g]iven that a party-designated arbitrator may in fact be ‘partial’, [his] participation in the arbitration proceedings in the dual capacity of arbitrator and witness may serve as a basis for vacatur only if his behavior in this regard can be properly categorized as constituting ‘corruption, fraud or misconduct’ (CPLR 7511 [b] [1] [i]).” (243 AD2d at 18.)
The Court continued: “It is established that an arbitrator’s hav *781 ing personal knowledge of the subject of controversy does not constitute misconduct in and of itself’ (243 AD2d at 18 [citations omitted]). Central to the analysis used by the Meehan court was the principle that “an arbitrator’s award may be vacated only upon the grounds specified in the statute . . . and that, if the party moving to vacate cannot establish one of the statutory grounds, the award must be confirmed” (243 AD2d at 17). Testimony by the party-designated arbitrator is not a stated statutory ground for vacating an award.
It has also been held that an arbitrator’s personal knowledge of facts relating to the controversy does not provide a ground upon which to remove the designee so long as the relationship has been fully disclosed to the opposing party (Matter of Siegel [Lewis], 40 NY2d 687 [1976]; Matter of State Wide Ins. Co. v Klein, 106 AD2d 390 [2d Dept 1984]). Indeed, it has been noted by the courts that arbitrators are often selected based upon their personal knowledge or a relationship with the parties that is likely to provide them with personal knowledge of the controversy. Thus, for example, in Matter of Siegel (Lewis) (40 NY2d 687 [1976]), the named arbitrators were the business’ attorney and accountant. It is thus apparent that personal knowledge does not on its own disqualify an arbitrator.
In Fritz v Fritz (186 AD2d 625 [2d Dept 1992]), the Court addressed an arbitration where the arbitrator had personal knowledge and did not testify. The critical holding in Fritz v Fritz (at 626) was that “[t]he arbitrator violated his duty by resorting to evidence that was not presented at the hearing, and by using personal knowledge of the disputed marital asset.”[14] This was a plain violation of the due process requirements set forth in CPLR 7506 (c), as the Fritz arbitrator denied the husband the opportunity to cross-examine and/or rebut evidence that was not presented but considered by the arbitrator. Assuming that the arbitrator has personal knowledge respecting facts that are material and relevant to the subject matter of the arbitration, so long as he testifies or advises the parties thereof and these *782 facts are subject to cross-examination and/or rebuttal there is no apparent violation of CPLR 7506 (c) (see Matter of Meehan v Nassau Community Coll., 243 AD2d 12 [2d Dept 1998]). Moreover, if the arbitrator has such knowledge and does not testify and his ultimate determination is based upon and supported by the evidence presented at the hearing, to the extent that the outcome is not totally irrational or violative of public policy (Matter of Spear, Leeds & Kellogg v Bullseye Sec., 291 AD2d 255 [1st Dept 2002]; Matter of Thompson [S.L.T. Ready-Mix, Div. of Torrington Indus.], 245 AD2d 911, 912 [3d Dept 1997]), the failure to testify will probably not constitute misconduct requiring vacatur of the award. In any event, such a determination must await the conclusion of the arbitration proceeding so the court can review the arbitrator’s conduct in the entirety.
Materiality
Petitioners acknowledge that the intent of the parties to the Hewlett limited partnership agreement and amendments is only relevant if the agreements are ambiguous. While petitioners argue that the agreement is in fact ambiguous, it is not for the court to make such a determination (CPLR 7501). Courts are bound by an arbitrator’s interpretation of a contract (Matter of TC Contr., Inc. v 72-02 N. Blvd. Realty Corp., 39 AD3d 762 [2d Dept 2007]). “Indeed, an arbitrator’s interpretation of the parties’ contract is impervious to judicial challenge” (Maross Constr. v Central N.Y. Regional Transp. Auth., 66 NY2d 341, 346 [1985]). Absent a conclusion by the arbitrator that the agreements are ambiguous, there is no need for the testimony that petitioners seek to obtain from the arbitrator, i.e., such proposed testimony is neither relevant nor material. The court further notes that an arbitrator is not bound by the substantive law or the rules of evidence (Matter of Silverman [Benmor Coats], 61 NY2d 299, 308 [1984]). Thus the question of materiality must await the arbitrator’s ruling on the ambiguity question and in that respect, the petition is dismissed as premature.
Conclusion
This court views the issue presented as whether the ability of Konner to act fairly and impartially is completely nullified by his personal knowledge and his potential role as a material witness. While the dual role of witness and adjudicator may be unacceptable in the trial context, it is not prohibited in the setting of a private arbitration where the arbitrator was preselected by the parties with full knowledge of his relationship to the parties and the subject matter of the agreement. Such knowledge and *783 his role in the arbitration will only be grounds for disqualification if it meets the standards of CPLR 7511 for vacating an award. Inasmuch as the petition is denied because there is no per se rule disqualifying an arbitrator who may be a witness and the petition is accordingly premature, the court will not address the other issues raised by respondents in opposition at this time. The court does not find that the petition is frivolous and respondents’ counterclaim for sanctions is accordingly dismissed. As noted above, the temporary restraining order is vacated.

. Matter of Kalikow, 14 Misc 3d 1203(A), 2006 NY Slip Op 52389(U) (Sur Ct, Nassau County 2006).

. Matter of Shalik v Kalikow, 15 Misc 3d 1106(A), 2007 NY Slip Op 50523(U) (Sur Ct, Nassau County 2007).

. Matter of Kalikow, 13 Misc 3d 1222(A), 2006 NY Slip Op 51942(U) (Sur Ct, Nassau County 2006).

. The decedent, Kalikow and Platt were the partners in Hewlett at the time of decedent’s death.

. The defenses are: (1) bar of collateral estoppel and/or res judicata; (2) failure to establish that Konner is a material witness; (3) the assertion that Shalik is a witness on the debt of Hewlett to the estate; and (4) the petition is barred as untimely. The court does not view items (2) and (3) as affirmative defenses and will not address items (1) and (4) due to its denial of the petition on other grounds.

. This court noted this when it granted reargument and reversed its earlier order disqualifying Konner. (See decision No. 116, dated Mar. 20, 2007.) In its January 27, 2009 affirmance of that order, the Appellate Division confirmed this court’s reading of Matter of Siegel (Lewis) (40 NY2d 687 [1976]; see Matter ofKalikow, 58 AD3d 849 [2d Dept 2009]).

. Such public policy is usually exhibited in a statute or decisional law, and “courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement.” (46 NY2d at 631.)

. CPLR 7511 (b) (1) (ii) states that “partiality of an arbitrator appointed as a neutral” is a ground for vacating an award, apparently acknowledging that a nonneutral need not be impartial (see Matter of Meehan v Nassau Community Coll., 243 AD2d 12 [2d Dept 1998], discussed infra). Though the commentators state that this provision is addressed to tripartite arbitration, it appears to also apply where the arbitration contract designates an arbitrator by name as such arbitrator is not “appointed as a neutral.”

. “An arbitrator’s paramount responsibility is to reach an equitable result, and the courts will not assume the role of overseers to mold the award to conform to their sense of justice.” {Matter of Sprinzen [Nomberg], 46 NY2d 623, 629 [1979].)

. The making of such oath may be waived (Matter of Institute of Inti. Educ. [Permanent Mission of Spain to United Nations], 118 AD2d 433, 435-436 [1st Dept 1986], Iv denied 68 NY2d 608 [1986] [the arbitrator’s failure to take an oath is waivable if the parties proceed without raising an objection]).

. Were the burden any lighter it would be a clear invitation for a party to phrase a request for arbitration so as to encompass areas within the personal knowledge of the named arbitrator as a basis for disqualification and identify the arbitrator as a material witness.

. Thus, for example, in Nestel v Nestel (38 AD2d 942 [2d Dept 1972]), an award was vacated where the arbitrators took the testimony of minor children in camera, denying the right of cross-examination.

. The arbitration provision, article 21 of the certificate of amendment of Hewlett Associates, a limited partnership (dated Jan. 3, 1980), states, inter alia, that “[a]ny controversy or claim arising out of or relating to this agreement or to the interpretation, breach or enforcement thereof shall be submitted to DENNIS A. KONNER, ESQ.”

. The Fritz court’s further conclusion that “under the circumstances of this case, the familial relationship provides such strong evidence of partiality that the arbitrator should have disqualified himself’ (186 AD2d at 626) is more in the nature of a value judgment and admonition than the holding in the case. Thus while this court should and will consider evidence of the arbitrator’s relationship to the parties and the issue in controversy on the question of “partiality,” absent the issuance of an award clearly demonstrating such partiality, evidence of partiality is unlikely to require disqualification at this point in the process.